FILED

2007 Dec-21  AM 10:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

SCOTTY DOUGLAS LEE,                          )
                                           )

        Defendant/Movant,                )

                                           )      **Case Numbers:**

vs.                                          )      **CR 02-S-73-J**

                                           )      **CV 05-S-8080-J**

UNITED STATES OF AMERICA,                    )

                                           )

        Respondent.                      )

## MEMORANDUM OPINION

On October 18, 2005, the movant, Scotty Douglas Lee, filed a *pro se* motion pursuant to 28 U.S.C. § 2255, challenging his conviction in the United States District Court for the Northern District of Alabama on June 11, 2002.  The movant is incarcerated at the Federal Correctional Institution in Ashland, Kentucky.

## I. PROCEDURAL HISTORY

On June 11, 2002, movant was found guilty after a jury trial on one count of conspiring to manufacture, distribute, and possess with the intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).  He was represented at trial by John Bodie.  Following the preparation of a presentence investigation report, on October 30, 2002, movant was sentenced to 240 months in prison.  Movant appealed his conviction and sentence, asserting: (1) that the court

erred by admitting into evidence expert testimony after the Government had failed to provide proper discovery regarding its experts; (2) that there was a material variance between the indictment and the evidence adduced at trial; (3) that the evidence was insufficient to support the conviction; (4) that various alleged acts of prosecutorial misconduct resulted in a fundamentally unfair trial; and (5) that the court erred at sentencing by failing to apply the "safety valve" provision of the United States Sentencing Guidelines, § 5C1.2.  Petitioner continued to be represented by Bodie on appeal.  The Eleventh Circuit Court of Appeals affirmed by opinion dated April 15, 2004.  On September 17, 2004, movant sought *certiorari* in the United States Supreme Court, which denied his petition on October 18, 2004.  *Lee v. United States*, 543 U.S. 949, 125 S. Ct. 362 (2004).

On October 12, 2005,[1] movant filed the instant motion to vacate his conviction pursuant to 28 U.S.C. § 2255, setting forth the following claims for relief:

> (1)    that he was denied his Sixth Amendment right to confront witnesses during trial when out-of-court statements made by a co-defendant, Ricky Jay Lewis, were admitted into evidence;

_____

[1]While the motion was not stamped "filed" until October 18, 2005, it was apparently signed by movant and delivered to prison officials for mailing on October 12, 2005.  Thus, under the "prisoner mailbox rule," it was deemed filed on that date.  *See Houston v. Lack*, 487 U.S. 266, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988).

(2)     that his trial counsel provided ineffective assistance in that he: (a) failed to argue for a severance of Lee's trial from that of the other co-defendants; (b) failed to inform him of the Government's pre-trial plea offer; (c) erroneously advised him to reject the Government's plea offer made during trial; and (d) failed to argue that he was entitled to a reduction in sentence for a mitigating role under U.S.S.G. § 3B1.2;[2]

(3)     that he received ineffective assistance of counsel on appeal in that his appellate attorney: (a) failed to challenge the 2-level enhancement of Lee's sentence on the basis of the use of a weapon; (b) failed to raise a *Blakely* claim on appeal; and (c) failed to raise a Confrontation Clause claim based on admission of Lewis's out-of-court statement; and

(4)     that his due process rights were violated in that the court improperly sentenced movant on the basis of facts not determined by a jury, in violation of *Blakely*.

Pursuant to the magistrate judge's order to show cause, the Government filed a response to the motion on January 5, 2006.  On January 17, 2007, the parties were notified that the matter would be considered for summary disposition, and the movant was notified of the provisions and consequences of this procedure under Rule 8 of the *Rules Governing § 2254 Cases*.  Movant filed a reply on February 24, 2006.

## II. PROCEDURAL DEFAULT

The Government first asserts that movant's substantive claim relating to his right to confront witnesses (Claim 1) is due to be dismissed as procedurally defaulted

---

[2]Movant also argues that counsel should have raised the issue on appeal.

because it could have been but was not raised on direct appeal; instead, it is being raised for the first time in this § 2255 motion.  The Government argues that the claim cannot be reviewed on the merits absent a showing of "cause and prejudice" by the movant, explaining and excusing his failure to raise the claim at trial and on direct appeal.

In *United States v. Frady*, 456 U.S. 152, 102 S. Ct. 1584, 71 L. Ed. 2d (1982), the Supreme Court made clear that federal claims implicating the validity of a conviction or sentence must be raised at the earliest appropriate time, and that the claims that can be argued on direct appeal cannot be asserted in a collateral § 2255 motion unless there is "cause and prejudice" excusing the appellate default.  "[A] collateral challenge may not do service for an appeal."  *Id*. at 165.  Adopting the "cause and prejudice" standard for § 2255 motions, the Supreme Court explained:

> Under this standard, to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) "cause" excusing his double procedural default, and (2) "actual prejudice" resulting from the errors of which he complains.

*Id*. at 167-168.  The "double procedural default" mentioned by the court is a clear reference not only to the failure to make a contemporaneous trial objection, but also to the failure to assert the issue on direct appeal.  The Eleventh Circuit has similarly applied the "cause and prejudice" standard for analysis of procedural defaults in the

4

§ 2255 context. In *Parks v. United States*, 832 F.2d 1244 (11th Cir. 1987), the Eleventh Circuit Court of Appeals held that alleged errors in sentencing could not be raised for the first time in a § 2255 *habeas* action without a showing of "cause and prejudice" excusing the failure to assert the claims on direct appeal.

In the instant case, it is clear that the movant procedurally defaulted this claim by failing to raise it in the direct appeal. Because the claim was not raised on direct appeal, the question becomes whether "cause and prejudice" exists that excuses the default. Movant specifically argues as "cause," and sets forth as a separate claim for relief, that his counsel rendered ineffective assistance on direct appeal because he failed to raise the confrontation issue at that time.

The question of establishing the requisite "cause" to avoid procedural default by alleging attorney error was addressed by the United States Supreme Court in *Murray v. Carrier*, 477 U.S. 478, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). In *Murray*, the petitioner in a *habeas* action attempted to show cause for a procedural default by establishing that his attorney inadvertently failed to raise the claim on appeal. *Id*. at 481. The Court explained:

> The mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Engle v. Isaac*, 456 U.S. 107, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982). The question of cause for a

5

procedural default does not turn on whether counsel erred or on the kind of error counsel may have made.  So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), there is no inequity in requiring him to bear the risk of attorney error that results in a procedural default.

*Id*. at 478-79.  The Supreme Court also has noted in *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000), that in order to constitute "cause" to excuse a procedural default, counsel's ineffectiveness in failing to raise properly the claim in state court "must have been so ineffective as to violate the Federal Constitution."  As discussed *infra*, movant has not presented any reason that might constitute "cause" to excuse the default, except to assert that he had ineffective assistance of counsel.  In this case, as discussed further below, counsel's failure to raise the issue  was not constitutionally ineffective assistance and, therefore, does not constitute "cause" excusing the failure to raise the claim on direct appeal.

The Government correctly notes that the movant also has failed to demonstrate the requisite prejudice.  First, it must be noted that the out-of-court statement by co-defendant Lewis about which movant complains did not name movant and did not specifically implicate him in any way.  The statement constituted an admission that Lewis bought pseudoephedrine pills in large quantities, and then resold them to a buyer whom Lewis refused to identify.  This statement did not inculpate Lee because

Lee was never identified as the buyer.  Further, in his trial testimony, Lewis testified that he met movant for the first time while in jail awaiting trial, thereby making clear that movant was not the unnamed buyer of Lewis's pills.  Moreover, movant was given the opportunity to cross-examine Lewis because Lewis took the stand in his own defense during trial,[3] even though movant's counsel chose not to cross-examine Lewis.[4] This opportunity to cross-examine, even if untaken, protected movant's Sixth Amendment right to confront the witnesses against him.

For these reasons, counsel was not ineffective in failing to raise on appeal the admission of Lewis's out-of-court statement during trial.  Counsel's decision not to object was not unreasonable in light of the fact that the statement did not implicate movant and given that Lewis took the witness stand, providing movant with the chance to cross-examine him.  Furthermore, there is no reasonable probability that if counsel had raised the claim on direct appeal it would have resulted in the reversal

---

[3]     As noted below, movant was tried jointly with Lewis and two other alleged co-conspirators, Thomas Whitt and Jerry Ward, Sr.

[4]     Given Lewis's testimony that movant was not the unnamed buyer of the pseudoephedrine pills, counsel's decision not to cross-examine Lewis was a reasonable decision. In the absence of any testimony from Lewis implicating movant, there was no reason to risk the dangers and uncertainty of cross-examining Lewis.  Movant does not allege or argue that counsel's decision not to cross-examine Lewis was ineffective.

of movant's conviction.  Because counsel was not ineffective on appeal, there is no "cause" to excuse the procedural default of the confrontation claim.

Accordingly, movant has not made a sufficient showing of "cause and prejudice" excusing the default.  Thus, movant's Claim 1 is due to be dismissed. Movant also raised this claim as a claim of ineffective assistance of counsel on appeal (Claim 3(c)).  Because movant has failed to show that his right to confront witnesses was violated, counsel cannot be deemed ineffective for failing to raise that non-meritorious claim on appeal.   Accordingly, Claim 3(c) also is due to be dismissed.

### III.  INEFFECTIVE ASSISTANCE OF COUNSEL

The movant asserts numerous claims that he received ineffective assistance of counsel both at trial and on appeal.  The United States Supreme Court has established a national standard for judging the effectiveness of criminal defense counsel under the Sixth Amendment.  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result."  *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  The Court elaborated:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

In order to show ineffectiveness of counsel, the movant must demonstrate that his or her attorney's performance fell below "an objective standard of reasonableness," 466 U.S. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. Also, in making such an evaluation, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690. The effectiveness or ineffectiveness must be evaluated by consideration of the totality of the circumstances. *Stanley v. Zant*, 697 F.2d 955, 962 (11th Cir. 1983). The court must remember that a defendant in a criminal case has a constitutional right only to adequate counsel; he is not entitled to the very best legal representation. *Stone v. Dugger*, 837 F.2d 1477 (11th Cir. 1988).

The second requisite element in a claim of ineffective assistance of counsel is a showing of prejudice. Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice. *See Strickland v. Washington*, *supra*. Prejudice means a reasonable probability that the outcome of the proceeding would have been different had the errors not occurred.

**A. Failure to Move for Severance** (Claim 2(a))

Movant alleges that his attorney rendered ineffective assistance in that he failed to file a motion for severance before trial, seeking a separate trial for Lee apart from his co-defendants. In support of this claim, movant argues that 95 percent of the evidence introduced at trial related to the co-defendants, and that the evidence at trial demonstrated that movant was only a buyer and seller.

This claim must fail because movant has failed to demonstrate that the motion would have been granted, or, if granted, that the result of the trial would have been different. At the outset, it is clear that movant was jointly indicted as a conspirator with his co-defendants. It is well settled that persons who are charged together should be tried together, and the principle holds especially true in cases involving a conspiracy. *See, e.g., United States v. Novaton*, 271 F.3d 968, 989 (11th Cir. 2001).

The evidence established that there existed a large conspiracy to manufacture and sell methamphetamine in Walker County during the time charged, and that movant played a role in that conspiracy, along with the three co-defendants with whom he went to trial, as well as 27 other indicted co-conspirators who pled guilty.  It is clear that, based on this allegation of conspiracy, most of the evidence presented in the joint trial would have been available to the Government in a severed trial, and that the jury was given multiple instructions during testimony and after the evidence was presented that certain evidence related only to certain defendants.  Movant has failed to show that the limiting instructions were insufficient or unsuccessful.

Moreover, it is very unlikely any motion to sever would have been granted. Motions to sever were filed by other defendants (who ultimately pled guilty) and were denied.  Indeed, one of the co-defendants who was tried jointly with movant filed a motion to sever, which was denied, and on appeal the Eleventh Circuit Court of Appeals rejected his severance argument.  Thus, there is no indication that such a motion, if filed by movant, would have met with any greater success, given the general rule that co-conspirators indicted together generally are tried together, unless they are seeking to present irreconcilable defenses.  Movant has not pointed to any of his defenses that were  irreconcilable to that of any co-defendant.  He simply

argues that he was prejudiced from the "spillover" effect of so much evidence being presented against his co-defendants.

Accordingly, movant has failed to demonstrate either that his counsel's failure to seek a severance was professionally unreasonable or that he was prejudiced by it. Thus, Claim 2(a) is without merit and is due to be denied because movant has failed to prove either of the two prongs of the *Strickland* test.

### B.  Plea Agreements (Claims 2(b) and 2(c))

Movant alleges that his trial attorney rendered ineffective assistance because he failed to inform movant of a plea offer made by the Government before trial and because he erroneously advised movant to reject a second plea offer made during trial.  (Claims 2(b) and (c)).  Specifically, he alleges that, after trial and conviction, he was informed by his attorney that, *before trial*, the Government had made to counsel a plea offer, but which counsel did not then relate to movant.  Although he claims the plea offer was made and not communicated to him by counsel, he admits that he knows nothing about the terms, conditions, or details of the offer.  Further, movant alleges that *during* trial, the Government made another plea offer to counsel, which counsel *did* discuss with movant.  The Government offered to recommend a six-year sentence in return for movant's guilty plea.  Movant asserts that counsel

recommended that he not accept the offer because the Government was afraid the jury might acquit movant, that counsel was confident of an acquittal, and, even if convicted, counsel stated that movant was entitled to a sentencing role adjustment that would leave him facing only two years in prison.  Movant argues that counsel rendered ineffective assistance by (1) not advising him at all about the pre-trial plea offer, and (2) by recommending that he reject the mid-trial plea offer.

Turning to the mid-trial plea offer first, the court is unpersuaded that counsel's recommendation to reject the offer was ineffective assistance.  First, there is no question that the mid-trial offer was properly communicated to movant by counsel. The question is whether counsel's advice to reject the offer was so professionally unreasonable that no reasonable defense attorney would have given that advice. Counsel is presumed to have acted reasonably, and the court must not engage in *post hoc* second-guessing of counsel's advice. *Cruz v. United States*, 188 Fed. Appx. 908, 2006 WL 1889947 (11th Cir. 2006) ("In determining whether counsel gave adequate assistance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'").
 Plainly, in giving that advice, counsel weighed the allegations against movant in light of the evidence presented in the trial to that point and reached the conclusion that the

Government's case against movant was so weak that even the Government felt compelled to make a mid-trial plea offer.  That type of advice, based on the uncertainties inherent in assessing the impact of evidence on a jury, is precisely the kind of informed judgments that attorneys are required to make everyday.  That the outcome of the trial ends up being different from what counsel had believed likely does not mean that counsel's advice was unsound or that he rendered ineffective assistance in giving it.  *Cf. Diaz v. United States*, 930 F.2d 832 (11th Cir. 1991) (counsel not ineffective in advising client to reject a plea offer from the Government because  it was "bullshit").

This analysis is not changed by the fact that counsel believed movant was entitled to a sentencing role adjustment that would reduce his likely sentencing range to around two years.  The  "minor participant" role adjustment is dependent upon the sentencing judge's assessment of the defendant's participation in the offense.  It too involves an element of uncertainty in predicting the future conclusions of the sentencing judge.  Nonetheless, criminal clients expect their attorneys to give them informed judgments about the possible outcomes at trial and generally "what they're facing" in sentencing.  Again, that counsel proved to be incorrect in his assessment

of the possibility of prevailing on a minor-participant role adjustment does not mean that he was ineffective.

Ultimately, movant made the decision whether to accept the mid-trial plea offer or not.  All counsel could do was provide basic information and advice informed by his own weighing of the likelihood of uncertain future events.  There is nothing presented here to show that counsel performed that role ineffectively.

Counsel's alleged failure to communicate a pre-trial plea offer from the Government is much more troubling because it raises the prospect that the client was not allowed to participate in a major decision by the defense.  As the court of appeals explained in *Diaz*, "[The] client must be involved in decision to accept or reject plea offer, and failure to inform client of offer constitutes ineffective assistance."  *Id*. at 934 (quoting *Johnson v. Duckworth*, 793 F.2d 898, 902 (7th Cir.), *cert. denied*, 479 U.S. 937, 107 S. Ct. 416, 93 L. Ed. 2d 367 (1986)).  Here, movant has alleged that his attorney informed him *after* conviction that the Government had made a plea offer before trial that was not then communicated to the movant.  Movant acknowledges that, although he learned of the plea offer after trial, he did not further inquire into it, and he does not now know the terms and conditions of the offer.  Nevertheless, he

avers that had the offer been communicated to him by counsel he would have accepted it, even though he rejected a six-year plea offer later.

Although the court is troubled by the lack of factual specificity in the movant's allegations, particularly his lack of information about the terms and conditions of the alleged offer, it believes that the prudent course at this time is to set a hearing on this issue. The Government has offered no evidence refuting the basic allegation that a pre-trial plea offer was made, nor has it offered any affidavit evidence from counsel that such an offer was communicated to the movant. Just as the movant's factual allegations on this claim are thin, the Government's response to it is thinner. It may well be argued that petitioner has not pled *facts* that, if true, would entitle him to relief. For example, he has not described the terms and conditions of the alleged offer, or when, how, or by whom it was made. Nevertheless, the possibility of an uncommunicated plea offer requires further inquiry, especially as the Government has not attempted to refute or explain it.

By separate order this claim will be referred to a magistrate judge for an evidentiary hearing on the narrow question of whether such a plea offer was communicated to movant's counsel, and whether counsel relayed it on to movant.

**C. Sentencing** (Claims 2(d) and 3(a)).

Movant asserts two claims relating to his sentencing hearing. First he contends that his trial attorney rendered ineffective assistance at sentencing because he failed to argue in favor of a reduction for a mitigating role under U.S.S.G. § 3B1.2. (Claim 2(d)). Under U.S.S.G. § 3B1.2, a defendant's base offense level may be reduced by 2 levels if the court finds that he was a "minor" participant in the crime of conviction, and by 4 points if he was only a "minimal" participant. Second, he argues that his attorney rendered ineffective assistance on appeal when he failed to raise a challenge to the court's two-level enhancement for movant's possession of a weapon. *See* U.S.S.G. § 2D1.1(b)(1). (Claim 3(a)).

First, movant faults his attorney for failing to argue that he should have been entitled to an adjustment for playing a minor role in the offense. The testimony at trial demonstrated that movant was involved in distributing methamphetamine in substantial quantities over a substantial period of time. He also provided essential ingredients to be used in the manufacture of methamphetamine. He provided a firearm to a co-conspirator in preparation for a "cook." Nothing in the evidence at trial suggests that movant was entitled to a reduction in sentence based on his role, and nothing asserted by movant in his *habeas* pleadings indicates that, had his

attorney made the argument, it would have been successful.  It was not professionally unreasonable for counsel to conclude that it would be futile to seek such a role adjustment, given movant's involvement.  Even if it was professionally unreasonable not to do so, movant suffered no prejudice because such an adjustment would not have been warranted or granted.  Accordingly, movant's claim of ineffective assistance relating to the mitigating-role adjustment is due to be dismissed.

It is clear that the issue relating to the enhancement for the possession of an assault rifle was raised at sentencing.  Witness Troy Mack Hyche testified, which the court said "clarified" the issue.  Hyche testified that the day before Hyche was arrested, movant brought an assault rifle to Hyche's house and gave it to him.  When Hyche commented that it had no shells in it, movant went and got five shells for the rifle.  Hyche testified that he told movant he did not want the rifle left at his house, and that he thought movant took it away when he left in his truck.  The next day, however, the rifle was found in the house when Hyche was arrested.  Movant argues that the testimony of Hyche was perjured for the sole reason that Hyche testified the gun was found under a sofa, and the agent who seized the gun said the gun was propped against a wall.[5]  Clearly, however, Hyche's testimony was that he was

---

[5]      Hyche was cross-examined by Bodie, and he clarified that it was "to the best of [his] knowledge" that the gun was found under a sofa.

unaware that the gun had been left in his house, and that it was a gun that had been procured by movant in anticipation of a methamphetamine "cook" that was about to take place involving Hyche and movant.

While there is an inconsistency between the agent's testimony about the gun location and Hyche's testimony, it is not sufficient to indicate that Hyche's testimony was perjured, or that the court improperly imposed the enhancement for a firearm. To the contrary, it is clear that, had counsel raised that issue on appeal, it would have been without merit.  The court made findings of fact, resolving inconsistencies and weighing credibility, that were not palpably or clearly erroneous, so it would have been very difficult to challenge the enhancement on appeal.  It was not professionally unreasonable for counsel to forego raising that issue in order to focus on more promising ones.  Accordingly, counsel did not render ineffective assistance by failing to raise the claim, and this claim is due to be denied.

**D.  Blakely** (Claims 3(b) and 4)

Movant's final claims are interrelated and rest on an assertion that his sentence was improperly increased on the basis of facts determined by the court at sentencing, and not included in the indictment, determined by a jury, or admitted to by the movant.  Movant alleges at Claim 3(b) that he received ineffective assistance of

counsel because his attorney did not raise a *Blakely* issue on appeal.  At Claim 4 he alleges the substantive *Blakely* claim that he was sentenced in violation of the Sixth Amendment on the basis of facts found by the court, rather than by the jury.

The parties do not dispute that counsel did not raise on appeal any issue based on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), or *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005).  Of course, it must be observed that of this line of cases, only *Apprendi* was decided prior to movant's trial and sentencing.  *Blakely* was decided on June 24, 2004, long after movant's sentencing, and even two months *after* his conviction and sentence were affirmed by the Eleventh Circuit Court of Appeals.  *Booker* was not decided until January 12, 2005, three months *after* the Supreme Court denied movant's petition for writ of *certiorari*.  Therefore, the decision in *Booker* came after all avenues of review were closed to movant and his conviction was final.

Discussing first the substantive *Blakely/Booker* claim, movant specifically contends that *Booker* should be applied retroactively to his sentence (Claim 4). Because it is now well-settled that such claims cannot be asserted on collateral challenges to convictions that were final at the time *Booker* was announced, the claim

is due to be denied.  *See Varela v. United States*, 400 F.3d 864, 868 (11th Cir. 2005),

*cert*. denied, 126 S. Ct. 312 (2005)("[W]e conclude that *Booker*'s constitutional rule

falls squarely under the category of new rules of criminal procedure that do not apply

retroactively to § 2255 cases on collateral review."); *Lundin v. United States*, 131

Fed. Appx. 677 (11th Cir. 2005); *Cook v. Bryant*, 139 Fed. Appx. 285 (11th Cir. 2005).

Moreover, even though *Blakely* was announced before movant's conviction became

final, the Supreme Court expressly declined to determine whether *Blakely*'s holding

applied to the Federal Sentencing Guideline.  Put simply, at the time movant's case

was still active, *Blakely* had not been extended to the Federal Sentencing Guidelines.

Accordingly, movant's claim that relies upon retroactive application of *Booker*

(Claim 4) is due to be dismissed.

 While it is clear that *Booker* cannot be applied retroactively, movant asserts

that his counsel rendered ineffective assistance in failing to assert the claim on

appeal, based on *Apprendi*, and by failing to include a *Blakely* claim in his petition

for writ of *certiorari*.  Any error in failing to specifically raise *Apprendi* caused no

prejudice to the movant, because his sentence was well below the statutory maximum.

The holding in *Apprendi* was specifically limited to cases in which the sentence

imposed is more lengthy than the statutory maximum that could be imposed for the

crime.  To the extent that movant states a claim based on counsel's failure to raise a *Blakely* claim in the petition for *certiorari*, he is not entitled to any relief because movant has no Sixth Amendment right to counsel in the discretionary appeal.  *See Pennsylvania v. Finley*, 481 U.S. 551, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987)(holding that right to counsel extends to first appeal of right and "no further").

But even assuming that the ineffective assistance claim involved something more than failure to raise the claim in a *certiorari* petition, movant's claim of ineffective assistance relating to the *Apprendi/Blakely/Booker* claim may succeed only if movant demonstrates both that counsel's performance was deficient and that movant suffered actual prejudice from counsel's failure to  raise a claim on appeal. Although *Apprendi* was available for counsel to argue, movant's claim essentially requires that counsel predict the future holdings in *Blakely* and *Booker*.  Movant's counsel can be deemed ineffective only if his failure to foresee future Supreme Court holdings was outside the realm of professional competence.

The Eleventh Circuit Court of Appeals has held that "an attorney's failure to anticipate a change in the law" does not constitute ineffective assistance of counsel. *United States v. Ardley*, 242 F.3d 989, 990 (11th Cir. 2001), *reh'g denied, United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001), *cert. denied*, 535 U.S. 979, 122

S.Ct. 1457, 152 L.Ed.2d 397 (2002); *see also Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994), *cert. denied*, 513 U.S. 1115 (1995); *Davis v. Singletary*, 119 F.3d 1471, 1476 (11th Cir. 1997), *cert. denied*, 523 U.S. 1141 (1998); *Pitt v. Cook*, 923 F.2d 1568, 1572-74 (11th Cir. 1991); and *Thompson v. Wainwright*, 787 F.2d 1447, 1459 n.8 (11th Cir. 1986), *cert. denied*, 481 U.S. 1042 (1987).  Professional competence does not require lawyers to be soothsayers.  This rule is applied even where the change in law was "reasonably" anticipated, and even when the change would, in hindsight, provide counsel with a "sure-fire winner."  *Ardley*, 273 F.3d at 993.  Moreover, the Eleventh Circuit Court of Appeals has held that when the issue presented is whether an attorney's failure to anticipate a change in the law constitutes ineffective assistance, "the district courts are not required to, and should not, hold an evidentiary hearing on that issue" because the issue is "settled as a matter of law." 273 F.3d at 993.

Although *Apprendi* had been announced by the time of movant's sentencing, *Blakely v. Washington*,  U.S. , 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), foreshadowing the infirmity of the Guidelines, had not.  Prior to *Blakely*, the cases dealt with judicial fact finding that enhanced a sentence above an apparent statutory maximum.  Only with *Blakely*, did it become clear that judicial fact finding within the

context of a determinate guidelines sentencing scheme also was unconstitutional.  As

the Eleventh Circuit recently observed:

> In *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63,
> 147 L. Ed. 2d 435 (2000), the Supreme Court held that "[o]ther than the
> fact of a prior conviction, any fact that increases the penalty for a crime
> beyond the prescribed statutory maximum must be submitted to a jury,
> and proved beyond a reasonable doubt."  The Court recently revisited
> that rule in the context of Washington State's sentencing guideline
> scheme, clarifying that "the 'statutory maximum' for *Apprendi* purposes
> is the maximum sentence a judge may impose *solely on the basis of the
> facts reflected in the jury verdict or admitted by the defendant*. In other
> words, the relevant 'statutory maximum' is not the maximum sentence
> a judge may impose after finding additional facts, but the maximum he
> may impose without any additional findings." *Blakely*, 124 S. Ct. at
> 2531, 2537 (citations omitted).

*In re Anderson*, 396 F.3d 1336, 1338 (11th Cir. 2005) (italics in original).  While it

is certainly true that lawyers could and did anticipate the extension of *Apprendi* to the

facts in *Blakely*, and ultimately to *United States v. Booker*, 543 U.S. 200, 125 S. Ct.

738, 160 L. Ed. 2d 621 (2005), the failure to do so before *Blakely* was announced

does not necessarily mean that counsel was ineffective.  To meet the minimal

standards of the Sixth Amendment, counsel need not be clever or creative, nor do

they need to anticipate novel changes in the law, particularly when that change runs

counter to existing precedent.  *See United States v. Levy*, 391 F.3d 1327, 1334 n. 3

(11th Cir. 2004) ("While an attorney's failure to anticipate a change in the law does not

constitute ineffective assistance of counsel, attorneys routinely make arguments based on reasonable extensions of existing Supreme Court case law."). Such is the case here. Although *Apprendi* alerted counsel to the law that facts necessary for an enhanced sentence beyond the maximum sentence must be found by the jury, it was not unreasonable, in light of existing circuit precedent upholding judicial fact finding under the Guidelines, for counsel not to anticipate the unconstitutionality of judicial fact finding in the context of Guidelines sentencing below the *statutory* maximum. Only *Blakely*, decided in 2004, after movant's direct appeal was over, made that conclusion clear.[6] Thus, it was not professionally unreasonable, and hence not ineffective assistance, for counsel not to raise an *Apprendi/Blakely/Booker* objection in the context of this sentencing or on appeal.

For the reasons discussed herein, Claim 3(b) also is due to be dismissed.

## V. CONCLUSION

Based on the foregoing considerations, the court finds that, with the exception of Claim 2(b), for which a hearing will be necessary, all of movant's other claims are defaulted or meritless. By separate order, the court will deny all of movant's § 2255

---

[6] Indeed, it can be argued that even *Blakely* did not make it clear, for several circuit courts of appeals thereafter upheld the constitutionality of the USSG in the face of *Blakely*, until *Booker* came along in 2005.

claims, except his claim of ineffective assistance of counsel arising from counsel's

alleged failure to communicate to movant a pre-trial plea offer from the Government.

As to that claim, the court will refer the matter to a magistrate judge for hearing and

report and recommendation, after counsel is appointed by the magistrate judge to

assist the movant at the hearing.

The Clerk is DIRECTED to serve a copy of this memorandum opinion upon

the movant.

DONE this 21st day of December, 2007.

_____
United States District Judge